OPINION
{¶ 1} The defendant in this case, The University of Cincinnati ("UC"), operates a medical school as well as the University of Cincinnati Hospital ("UC Hospital"). In 1991, plaintiffs David Russell, Lori Riddle, and Robert Heffern were all examined at the UC Hospital by a man whom they knew as Dr. Thomas West, and whom all believed to be a physician. However, West was not a physician, and has been convicted of several crimes related to this incident, including impersonating a physician, practicing medicine without a license, and battery.
{¶ 2} On March 3, 1998, plaintiff Russel was the first to file a civil lawsuit against UC Hospital in the Ohio Court of Claims. Plaintiffs Heffern and Riddle also filed suit, and all three actions were subsequently consolidated. The gravamen of the plaintiffs' actions was that UC Hospital negligently provided West with access to its facilities, including its emergency department and examination rooms and, thus, gave West the opportunity to examine the plaintiffs. The matter proceeded to trial before the court which rendered a decision in favor of all three plaintiffs.
{¶ 3} A brief summary of the evidence presented at trial follows. Thomas West testified that he received an undergraduate bachelor's degree in biology, but had been unsuccessful in gaining admission to medical school. Undaunted, although he was never enrolled as a student, West started surreptitiously attending classes at the UC medical school in 1986. He also read materials from the UC medical school library and attended teaching rounds with medical students where he observed medical procedures at the UC Hospital. Throughout this period, West did not inform any of the instructors that he was not a medical student. Rather, West made every effort to "blend in" so as to pass himself off as a legitimate medical student, and he was quite successful in doing so.
{¶ 4} Between 1987 and 1991, West masqueraded as a physician at the UC Hospital. He took lab coats with embroidered UC insignia from coat racks in the doctors' lounges and wore them in the hospital. He also wore "scrubs," which were stolen from locker and changing rooms at the hospital. He purchased and wore a stethoscope.
{¶ 5} West testified that he had procured and altered an identification badge from Providence Hospital, and another from a nearby Children's Hospital. According to West, the staff members at UC Hospital eventually recognized him and began addressing him as "Dr. West." He even claimed to have received hand-delivered mail at the UC Hospital and was paged over the hospital intercom system on numerous occasions. Although he could not open doors that required a special UC Hospital security badge, he often simply obtained access by asking other employees to swipe their own badges or followed others after they opened and passed through those doors.
{¶ 6} According to West, during the four-year period spent at UC Hospital, he had access to the facilities as would any physician, boasting that when he examined the plaintiffs at UC Hospital, he had no difficulty obtaining medical instruments and medications from treatment and supply rooms. Although he posed as a physician at other hospitals in the Cincinnati area, West testified that he spent about 75 percent of his time at the UC Hospital.
{¶ 7} During the time West posed as a physician, West "treated" all three of the plaintiffs at the UC Hospital. However, all three plaintiffs testified that they did not register as patients at the hospital, did not fill out any admissions or insurance paperwork, nor did any of the three receive a bill from West or from the UC Hospital.
{¶ 8} After trial, the Court of Claims concluded that the plaintiffs were business invitees of the UC Hospital. It also concluded that UC Hospital breached a duty of ordinary care owed to the plaintiffs and that hospital staff were negligent in implementing security policies and procedures. The court further determined that plaintiffs were negligent in allowing West to perform medical services. Specifically, the court found that the plaintiffs' own negligence caused 40 percent of their damages, while the UC Hospital's negligence caused 60 percent of the plaintiffs' damages. The court ultimately awarded $200,000 in total damages to Riddle, $125,000 in total damages to Russell, and $100,000 in total damages to Heffern. However, it then reduced each of the awards by 40 percent.
{¶ 9} On March 29, 2001, this court reversed the trial court's decision in favor of plaintiffs, finding that the trial court erred when it determined that plaintiffs were business invitees of defendant. Finding plaintiffs to be licensees, we remanded this matter instructing the trial court to determine whether UC breached its duty to refrain from wantonly or willfully causing injury to the plaintiffs. Heffern v. Univ. of Cincinnati Hosp. (2001), 142 Ohio App.3d 44. Although this court's order of remand did not instruct the trial court to consider whether the defendant's conduct was reckless as well as wanton and willful, plaintiffs did not seek reconsideration of, or otherwise object to that order. Plaintiffs' appeal to the Ohio Supreme Court was denied, as was their motion for reconsideration.
{¶ 10} On remand, the trial court concluded that defendant had not breached the duty owed to plaintiffs and subsequently rendered judgment in favor of the defendant. Thereafter, plaintiffs filed a motion for new trial, judgment notwithstanding the verdict ("JNOV"), and for reconsideration, arguing for the first time that the court should have also specifically considered whether defendant's conduct was reckless. Plaintiffs' motions were denied by the court on December 5, 2001, and this appeal followed. All three plaintiffs filed notices of appeal, which were consolidated, and plaintiffs present the following two assignments of error:
{¶ 11} "1. The Court of Claims erred as a matter of law to the prejudice of the Appellants in that the Court of Claims denied Appellants' Motions for New Trial, JNOV and Motion for Reconsideration, and further erred to the prejudice of the Appellants in that the Court of Claims applied the incorrect legal standard in its judgment entry issued following remand to that court in Heffern I.
{¶ 12} "2. The Court of Claims erred as a matter of law to the prejudice of the Appellants in that the Court of Claims' decision was against the manifest weight of the evidence."
{¶ 13} Although the plaintiffs ostensibly argue that the trial court incorrectly denied their post-remand motions for a new trial, JNOV, and for reconsideration, they do not argue, nor do they offer any legal support for the proposition that the trial court applied the incorrect legal standard to these motions. Rather, plaintiffs argue that this court incorrectly failed to instruct the trial court to consider whether defendant's conduct was also reckless. On remand, our order stated that: "[w]e therefore remand this matter for determination of whether UC Hospital breached its duty to refrain from wantonly or willfully causing injury to the plaintiffs and for further proceedings consistent with this decision." Heffern, supra. In its judgment entry, the trial court did precisely what this court instructed. Accordingly, the issue placed before this court is whether the trial court is bound by this court's mandate, or whether it may vary that mandate in the manner suggested by plaintiffs.
{¶ 14} Recently, in State ex rel. Sharif v. McDonnell, Judge (2001), 91 Ohio St.3d 46, the Ohio Supreme Court reaffirmed the vitality of the rule of law known as the "law of case," explaining:
{¶ 15} "Sixteen years ago, in Nolan v. Nolan (1984),11 Ohio St.3d 1, 11 OBR 1, 462 N.E.2d 410, we explained the law-of-the-case doctrine, which we set forth in the syllabus:
{¶ 16} "`Absent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case. (State ex rel. Potain v. Mathews [1979],59 Ohio St.2d 29, 32, [13 O.O.3d 17, 18-19, 391 N.E.2d 343, 345], approved and followed.)'
{¶ 17} "We explained that, under this doctrine, a reviewing court's decision was the law in the reviewed case for all legal questions and for all subsequent proceedings in the case. We observed that `the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution.' As it operates, `the doctrine functions to compel trial courts to follow the mandates of reviewing courts.' [Nolan] 11 Ohio St.3d at 3, 11 OBR at 2-3, 462 N.E.2d at 412-413.
{¶ 18} "In State ex rel. Potain v. Mathews, the decision that Nolan approved and followed, decided five years earlier, the court ruled that a trial court must `follow the mandate, whether correct or incorrect, of the Court of Appeals. A lower court has no discretion, absent extraordinary circumstances, to disregard the mandate of a superior court in a prior appeal in the same case.' (Emphasis added.) [Potain] 59 Ohio St.2d at 32, 13 O.O.3d at 18, 391 N.E.2d at 345." Id. at 47-48.
{¶ 19} See, also, Transamerica Ins. Co. v. Nolan (1995),72 Ohio St.3d 320; State ex rel. Potain, S.A. v. Mathews, Judge (1979),59 Ohio St.2d 29; and Nolan v. Nolan (1984), 11 Ohio St.3d 1.
{¶ 20} In this case, there exist no "extraordinary circumstances" which would allow the trial court to deviate from this court's order. Although they had every opportunity to do so, plaintiffs did not object or challenge the omission of the word "reckless" from this court's order either before this court, by way of a motion for reconsideration, or in the context of plaintiffs' attempted appeal to the Ohio Supreme Court.
{¶ 21} "[The] rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. * * * Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law." Nolan, supra, at 3.
{¶ 22} There being no "extraordinary circumstances," the trial court correctly followed this court's order on remand. Plaintiffs' first assignment of error is overruled.
{¶ 23} In their second assignment of error, plaintiffs contend that the trial court's determination that defendant did not act wantonly or willfully stands against the manifest weight of the evidence. However, plaintiffs do not directly challenge or present any argument that the trial court incorrectly concluded that defendant's conduct was neither willful or wanton. Instead, plaintiffs argue that a different result would have been reached had the trial court specifically considered the question of recklessness. Unfortunately, as discussed above, this is precisely the same argument that plaintiffs failed to assert in a timely manner. Accordingly, plaintiffs' second assignment of error is also overruled.
{¶ 24} For the foregoing reasons, both of appellants' assignments of error are overruled, and the judgments of the Ohio Court of Claims are affirmed.
Judgments affirmed.
BRYANT, J., and TYACK, P.J., concur.